1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Amy Daniele Aguirre,                )    No. CV-09-2575-PHX-LOA
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11  vs.                                  )
                                         )
12  Michael J. Astrue, Commissioner of the)
    Social Security Administration,      )
13                                       )
                Defendant.               )
14  _____)

15          Plaintiff has filed a Complaint seeking judicial review of the Commissioner of Social

16  Security's denial of her application for disability insurance benefits.  *See* 2 U.S.C. § 405(g).

17  In accordance with Local Rule of Civil Procedure 16.1, the parties have filed briefs addressing

18  Plaintiff's claims.  (Docs. 29, 30, 31) The parties have consented to proceed before a United

19  States Magistrate Judge. (Docs. 9, 15) Based on the record as a whole and the applicable law,

20  the decision of the Commissioner is affirmed.  The decision of the Administrative Law Judge

21  ("ALJ") is supported by substantial evidence and is legally correct.

22  **I.  Procedural Background**

23          On September 8, 2006, Plaintiff applied for Disability Insurance Benefits and

24  Supplemental Social Security Income under Titles II and XVI of the Social Security Act (the

25  "Act"), 42 U.S.C. §§ 401-433 and §§ 1381-1383c.  (Tr. 26, 131-140[1])  Plaintiff alleged

26  disability with an onset date of September 1, 2004 due to back and neck issues stemming from

27  _____

28          [1]  Citations to "Tr."  are to the administrative transcript.

a March 16, 2004 car accident. (Tr. 131, 144, 149)  Plaintiff's application was denied initially and on reconsideration.  (Tr. 66-69, 77-83)  Thereafter Plaintiff requested a hearing which was held before Administrative Law Judge ("ALJ") Joan G. Knight.  (Tr. 84-85)  On August 4, 2009, the ALJ denied Plaintiff's application.  (Tr. 11-27)  This decision became the final decision of the Commissioner of Social Security when the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (Tr. 1)  Plaintiff then brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision.  This matter is fully briefed and ripe for review.

**II. Applicable Legal Standards**

   **A.  Sequential Evaluation Process**

      Under the Social Security Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423 (d)(1)(A).  An individual is determined to be under a disability if "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § (d)(2)(A).  The claimant bears the initial burden of proving that she is disabled.  42 U.S.C. § 423 (d)(5); *Burch v.Barnhart*, 400 F.3d 676, 679 (9ᵗʰ Cir. 2005).  If the claimant shows that she is unable to perform past relevant work, the burden shifts to the Commissioner to show that the claimant "can perform other substantial gainful work that exists in the national economy."  *Takcett v. Apfel*, 180 F.3d 1094, 1098 (9ᵗʰ Cir. 1999).

      An ALJ determines an applicant's eligibility for disability benefits by following the five steps listed below:

      (1)  determine whether the applicant is engaged in "substantial gainful activity";

      (2)  determine whether the applicant has a "medically severe impairment or combination of impairments";

- 2 -

1    (3)  determine whether the applicant's impairment equals one of a number of
2    listed impairments that the Commissioner acknowledges as so severe as to
     preclude the applicant from engaging in substantial gainful activity;

3    (4)  if the applicant's impairment does not equal one of the "listed impairments,"
     determine whether the applicant has the residual functional capacity to perform
4    his or her past relevant work;

5    (5) if the applicant is not capable of performing his or her past relevant work,
     determine whether the applicant "is able to perform other work in the national
6    economy in view of his [or her] age, education, and work experience."

7    *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)).  At the

8    fifth step, the burden of proof shifts to the Commissioner.  *Bustamante v. Massanari*, 262 F.3d

9    949, 953-54 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).

10       Applying the five-step analysis, the ALJ found that Plaintiff has severe impairments

11   which prevent her from performing past relevant work.  (Tr. 16, 25)  However, the ALJ

12   concluded that Plaintiff had the residual functional capacity to perform the full range of

13   sedentary work and she was not disabled as defined in Social Security Act. (Tr. 20, 26)

14   **B.  Standard of Review**

15       This Court must affirm the Commissioner's findings if they are supported by substantial

16   evidence and are free from reversible legal error.  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th

17   Cir. 1997) (*per curiam*); *Smolen v. Chater*, 80 F.3d 1273, 1279  (9th Cir. 1996).  Substantial

18   evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant

19   evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*

20   *v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Reddick v. Chater*, 157 F.3d

21   715, 720 (9th Cir. 1998).  In determining whether substantial evidence supports a decision, the

22   court considers the record as a whole, weighing both the evidence that supports and that which

23   detracts from the ALJ's conclusions.  *Reddick*, 157 F.3d at 720.  The ALJ is responsible for

24   resolving conflicts, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53

25   F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If

26   sufficient evidence supports the ALJ's determination, the Court cannot substitute its own

27   determination.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).  Therefore, if on the

28   whole record before the Court substantial evidence supports the Commissioner's decision, this

1  Court must affirm it.  *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C.A.
2  § 405(g).

3  **III.  Facts**

4      **A.  Plaintiff's Background**

5      Plaintiff was born on August 28, 1969 and was 39 years old at the time of the
6  administrative hearing.  (Tr. 41)  Plaintiff has a high school education and an associate's degree
7  in computer networking administration.  (Tr. 41)  Plaintiff claims disability due to chronic neck
8  and back pain stemming from a car accident in 2004.

9      **B.  Medical Evidence regarding Physical Impairments**

10      Plaintiff suffers from cervicogenic headaches, cervical radiculopathy, mood disorder
11  secondary to a general medical condition, and mild degenerative joint disease.  (Tr. 16)  Plaintiff
12  alleges she began suffering disabling chronic pain after she was involved in car accident in
13  March 2004.  (Tr. 45)  Plaintiff was in a second car accident in April 2005 which also
14  contributed to her pain.  (Tr. 45)  Plaintiff was treated by Landon Hoecker, M.D., her primary
15  care physician, in 2005.  (Tr. 358)  He assessed "chronic pain syndrome with probable
16  psychiatric overlay" and noted that there was a "fair paucity of significant radiographic findings
17  on plain film imaging and more specifically, MRI.  (Tr. 358)  Thereafter, Plaintiff was referred
18  for treatment for pain management.

19      **1.  Marcia Mastrin, M.D. - Treating Physician**

20      Dr. Mastrin treated Plaintiff from January 6, 2006 to June 24, 2008. (Tr. 268)  During
21  that time, she saw Plaintiff 44 times.  (in chronological order: Tr. 268-71, 277-79, 280-83, 491-
22  92, 317-21, 499-501, 332-34, 502-03, 335-37, 507-09, 514-15, 520-21, 525-27, 534-35, 538-40,
23  541-42, 543-44, 545-46, 640-41, 636-38, 632-34, 626-27, 622-24, 618-620, 614-16, 612-13,
24  605-06, 603-04, 756-57, 758-60, 939-41, 934-36, 929-31, 920-22, 908-10, 905-07, 902-04, 899-
25  901, 890-92, 886-88, 881-83)  Dr. Mastrin provided pain management, which included
26  prescribing pain medications, such as morphine, Tr. 271.  She ordered cervical nerve blocks in
27  March and April 2006, steroid injections to the sacroilliac joint in May 2006, "radiofrequency
28  neurotomies" of the cervical nerves in June 2006 which were administered by David Calkins,

1  M.D. (Tr. 456, 461, 453-56, 449-52, 445-48)  Dr. Mastrin also ordered cervical facet injections
2  in January 2007 which were performed by Gabriel Bonilla, M.D., and Robert Brownsburger,
3  M.D. (Tr. 609-11)  When Dr. Mastrin saw Plaintiff for the last time, in July 2008, Plaintiff
4  continued to suffer hip pain, back pain, "myofascial pain of the neck along with cervical facet
5  mediated pain[,and] debilitating headaches." (Tr. 881)

6        In connection with Plaintiff's application for Social Security benefits, on October 9,
7  2006, Dr. Mastrin completed a Medical Source Statement of Ability to Do Work-Related
8  Activities (Physical). (Tr. 439-443) Dr. Mastrin concluded, without providing any explanation,
9  that Plaintiff could occasionally carry less than 10 pounds; could stand/walk ½ -1 hour during
10  an 8 hour day; could sit for less than 2 hours at a time during an 8 hour day. (Tr. 440-41)  Dr.
11  Mastrin opined that, due to Plaintiff's "neck & back pain", she could never climb
12  ladders/ropes/scaffolds; and could occasionally climb ramps/stairs, balance, stoop, kneel,
13  crouch, crawl, reach and handle. (Tr. 442)  Dr. Mastrin further opined that because Plaintiff
14  was taking pain medication, she had several "environmental restrictions" and should avoid
15  working around heights, moving machinery, extreme temperatures; and should avoid working
16  with or around chemicals, dust/fumes or gas, and excessive noise. (Tr. 442)

17       At the request of the Department of Economic Security, in June 2007, Dr. Mastrin
18  completed a Medical Statement and checked a box on the form indicating that Plaintiff would
19  be unable to perform "any substantially gainful employment for which he/she is qualified." (Tr.
20  770-771)

21    **2.  Arlen D. Green, D.O. - Treating Physician**

22       Dr. Green, a pain specialist, began treating Plaintiff in August 2008 on referral from Dr.
23  Mastrin.  Dr. Green treated Plaintiff nine times between August 2008 and April 6, 2009.  (in
24  chronological order: Tr. 878-80, 873-75, 869-71, 864-66, 859-61, 854-56, 977-79, 973-75, 969-
25  71) On January 5, 2009, Dr. Green completed a Pain Functional Capacity (RFC) Questionnaire.
26  (Tr. 851)  Dr. Green concluded that Plaintiff suffered pain at the moderately severe level (pain
27  "seriously affects ability to function"). (Tr. 851)   He further opined that Plaintiff's degree of
28  pain could not "reasonably be expected to result from objective clinical or diagnostic findings,

1    which have been documented by [him], or elsewhere in [Plaintiff's] medical records." (Tr. 851)

2          He noted that Plaintiff's pain is precipitated by changes in weather, movement/overuse,

3    and stress.  (Tr. 851)   Dr. Green further found that Plaintiff's pain frequently interfered with

4    her attention and concentration and that she "frequently experiences deficiencies of

5    concentration, persistence, or pace resulting in failure to complete tasks in a timely manner."

6    (Tr. 851-52)

7          **3.   Frank Shallenberger, M.D. - Non-examining Physician for Arizona DES**

8          In November 2006, Dr. Frank A. Shallenberger, a state agency physician, completed a

9    Physical Residual Functional Capacity Assessment form as part of Plaintiff's initial

10   determination. (Tr. 559-66)  Dr. Shallenberger assessed that Plaintiff could occasionally lift 20

11   pounds, frequently carry 10 pounds, could stand or walk (with normal breaks) at least 2 hours

12   in an 8-hour day, and was not limited in her ability to push or pull.  (Tr. 560)  Dr. Shallenberger

13   assessed that Plaintiff had no limitations in sitting.  (Tr. 560)  Dr. Shallenberger opined that

14   Plaintiff could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; that Plaintiff

15   could never climb ladders/ropes/scaffolds; and could frequently balance.  (Tr. 561)  He further

16   found that Plaintiff had no "manipulative," "visual," or "communicative" limitations.  (Tr. 562-

17   63)  Dr. Shallenberger found that Plaintiff should avoid concentrated exposure to extreme heat,

18   cold, and vibration; and should avoid all exposure to hazards such as heights and machinery.

19   (Tr. 563) Dr. Shallenberger found that the "statements of claimant regarding her symptoms and

20   functional abilities are not fully supported by the medical evidence presented to us and for this

21   reason I find her statements only partially credible."  (Tr. 564-66)

22        **B.  Evidence pertaining to Mental Impairments**

23        **1.  Susan Anderson, Nurse Practitioner**

24        In October 2005, Plaintiff had a mental health intake examination, but did not follow up

25   after that examination.  (Tr. 33, 693-710)  In December 2006, Plaintiff had another mental

26   health intake evaluation and was then seen on a regular basis by Susan Anderson, a psychiatric

27   mental health nurse practitioner, from January 2007 to February 2009.  (Tr. 33-34, 680-90, 842-

28

50)  Plaintiff was diagnosed with panic disorder with agoraphobia[2] and post-traumatic stress disorder ("PTSD").  (Tr. 682) These diagnoses remained consistent throughout the course of Plaintiff's treatment.  (Tr. 680-83, 690, 685, 850, 847, 823, 805, 967)  Assessments of Plaintiff's overall functioning [global assessment of functioning ("GAF") scores] ranged from 50-56.  (Tr. 682, 685, 850, 847, 805, 967, 960, 824)  Plaintiff was prescribed Paxil, an antidepressant, and Klonopin, an axiolytic.  (Tr. 683)

### 2. Patricia Abbott, Psy.D - Examining Physician

At the request of the State agency, Patricia Abbott, a licensed psychologist, examined Plaintiff in October 2006.  (Tr. 552-58) Dr. Abbott indicated that she was provided "part of an assessment dated 1/6/2006 by Marcia Mastrin, M.D. and partial other pages of an assessment by David Calkin, M.D."  (Tr. 552) Dr. Abbott examined Plaintiff and administered various psychological tests.  (Tr. 553-558) Dr. Abbott noted "deficits in processing speed and working memory" noting that "[i]t is certainly possible that these deficits could result from focusing difficulties related to pain."  (Tr. 558) Dr. Abbott diagnosed pain disorder, associated with both psychological factors and a general medical condition, chronic.  (Tr. 558) Dr. Abbott also completed a Medical Source Statement of Ability to Do Work Related Activities (Mental).  (Tr. 547) She opined that Plaintiff was "[n]ot significantly limited (good/mild limitations)" in her ability "to remember locations and work-like procedures," and "to understand and remember [and carry out] very short and simple instructions."  (Tr. 547, 548)  Dr. Abbott opined that Plaintiff was "moderately limited (fair/limited but not precluded)" in her "ability to understand and remember [and carry out] detailed instructions." (Tr. 548) She found Plaintiff "moderately limited" in her ability "to maintain attention and concentration for extended periods;""to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance"; "to work in coordination with or proximity to others without being distracted by them"; "to make simple work related decisions"; and "to complete a normal

---

[2] Agoraphobia is an anxiety disorder. Agoraphobia may arise by the fear of having a panic attack in a setting from which there is no perceived easy means of escape. Wikipedia, November 18, 2010, www.wikipedia.org/wiki/Agoraphobia/.

workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 548-49)  She found Plaintiff "not significantly limited" in her ability "to sustain an ordinary routine without special supervision"; "to interact appropriately with the general public"; "to ask simple questions or request assistance"; "to accept instructions and respond appropriately to criticism from superiors"; "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; "to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness"; "to respond appropriately to changes in the work setting"; "to be aware of normal hazards and take appropriate precautions"; "to travel in unfamiliar places or use public transportation"; "to set realistic goals or make plans independently of others." (Tr. 548-50)

Although each section of the Medical Source Statement form asked "[o]n which findings have you based this conclusion," Dr. Abbott did not provide that information for any of her findings on the Medical Source Statement. (Tr. 547-551)

### 3. Robert Narvaiz, M.D. - Examining Physician

In July 2007, Dr. Narvaiz performed a psychiatric examination at the request of DES. (Tr. 766-69)  Dr. Narvaiz apparently was not provided Dr. Abbott's report.  Dr. Narvaiz diagnosed panic attack disorder, stable; possible ("rule out") post-traumatic stress disorder, adjustment disorder with mixed features, although he did not assess any limitations in functioning as a result.  (Tr. 768)  He opined that Plaintiff's mental limitations would not impose work-related limitations for the next twelve months.  (Tr. 768)

### 4. Edward Jasinski, Ph.D. - Non-examining Psychologist

Administrative Law Judge Knight called Dr. Jasinski to testify at Plaintiff's administrative hearing.  (Tr. 33-41)  Dr. Jasinski's testimony was based on his review of the documentary evidence.  Dr. Jasinski declined to ask Plaintiff any questions.  (Tr. 33) Dr. Jasinski opined that Plaintiff suffered from a "mood disorder secondary to general medical condition," that imposed mild to moderate limitations in functioning.  (Tr. 35-36)  In Dr. Jasinski's opinion, the evaluations of the consultative examiners were more thorough than the

1   treatment notes. (Tr. 39-40)  He opined that "neither of the evaluators who evaluated [Plaintiff],

2   felt that her symptoms were all that significant from a purely mental health standpoint."  (Tr.

3   40)

4       Dr. Jasinski stated that "based upon solely the treatment notes, I mean the diagnoses and

5   the GAFs, it would be my opinion that that would impact on an individual's ability to maintain

6   functioning secondary to difficulties because of mental health symptoms."  (Tr. 40-41)  He

7   testified that Plaintiff's mental impairments could affect her ability to understand, remember,

8   and carry out detailed instructions, but Plaintiff should be able to understand, remember, and

9   carry out simple instructions and maintain pace for an eight-hour day.  (Tr. 36)

10  **III.  Hearing Testimony**

11      Plaintiff, vocational expert, Joseph Bluth, Ph.d, and Dr. Jasinski were the only witnesses

12  who testified at the administrative hearing.  Dr. Jasinksi testified first, as set forth above.

13      Plaintiff testified that she was a cars accident in 2004 and 2005 and has had chronic neck

14  and back pain since then.  (Tr. 45)  She suffers from pain in the back of her head and neck,

15  going down her arms and back for which she has received treatment for pain management.  (Tr.

16  45)  She testified that the various treatments have provided temporary relief lasting several

17  months. (Tr. 46-47)  She testified that she had taken various over-the-counter and prescription

18  medications that have side effects including "sleepiness" and nausea.  (Tr. 47-48)   Plaintiff

19  testified that she has headaches every day. (Tr. 48-49) Plaintiff testified that a typical day starts

20  with her waking up with a "stiff neck [and] back." She takes her medications, does her stretches,

21  and gets "shooting pains going in the back of [her] head." (Tr. 48)  After taking her medication

22  and stretching, she has to lay down "for the day because [she] usually end[s] up with a

23  migraine." (Tr. 48)  Plaintiff testified that she gets a migraine every day which makes her

24  sensitive to light.  (Tr. 49)  She "never go[es] outside" or feels like doing anything.  (Tr. 49)

25  She also testified that after she gets up, she wakes her son up for school and makes him

26  something to eat and then lays down the rest of the day.  (Tr. 49)  Plaintiff also testified that she

27  is doing "very badly" emotionally and is anxious, and frustrated by her inability to function.

28  (Tr. 50)  Plaintiff testified that she has panic attacks when she tries to leave the house.  (Tr. 50-

51) Plaintiff is single and lives in an apartment with her 17-year-old son. She usually makes dinner, "something fast." She cleans about 15 minutes a day, her son does the laundry, and makes his own lunch. (Tr. 53-54)

The vocational expert, Joseph Bluth, Ph.D., testified in response to a hypothetical question by the ALJ that mirrored the assessment of the non-examining state agency reviewer, Dr. Shallenberber. (Tr. 55-56, Tr. 559-64) Based on that hypothetical, the vocational expert testified that a person with those limitations could perform sedentary unskilled work as an assembly worker, quality control inspector, and general office clerk. (Tr. 56) These are the jobs the ALJ relied upon in her decision. (Tr. 26)

**IV. The ALJ's Decision**

On August 4, 2009, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 14) At the first step of the sequential analysis, the ALJ found that Plaintiff had not performed any substantial gainful activity since the disability onset date. (Tr. 16) The ALJ then found that Plaintiff had the following severe impairments: cervicogenic headaches, cervical radiculopathy, mood disorder secondary to a general medical condition, and mild degenerative joint disease at L5-S1. (Tr. 16) At the third step, the ALJ found that none of Plaintiff's impairments, or a combination of impairments, was severe enough to meet or medically equal a presumptively disabling impairment in the Listing of Impairments, 20 C.F.R. Part 404, Appendix 1, Subpart P. (Tr. 16) At steps four and five, the ALJ found that Plaintiff could not perform past relevant work, Tr. 25, but she could perform other work in the national economy identified by the vocational expert, Tr. 26.

The ALJ found that Plaintiff had the residual functional capacity to perform a range of sedentary work: She could lift/carry slightly less than ten pounds frequently and slightly less than twenty pounds occasionally; she could walk/stand slightly more than two hours per day and had no limits on sitting; she had no limits on pushing/pulling; she could occasionally rotate, flex, or extend the cervical spine; she could never climb ladders, ropes or scaffolds; she could occasionally climb ramps and stairs, kneel, crouch, and crawl; she needed to avoid concentrated exposure to extreme cold, heat, and vibration and all exposure to hazards; and she was limited

1   to performing simple work.  (Tr. 19-20)

2        Based on the vocational expert's testimony, the ALJ concluded that, although Plaintiff

3   could not perform her past relevant work, Tr. 25, she could perform other work in the national

4   economy, including assembly worker, quality control inspector, and general office clerk.  (Tr.

5   25-26)  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  (Tr.

6   26)

7   **V.  Analysis**

8        In support of her request for relief Plaintiff argues that:

9        1.  The ALJ committed an error of law by rejecting the assessments of Plaintiff's

10  treating physicians, Marcia Mastrin, M.D., and Arlen Green, D.O, and instead relying on the

11  opinion of a non-examining state agency physician as part of her determination.

12       2.  The ALJ committed legal error by rejecting the assessment of the state agency

13  examining psychologist, Patricia Abbott, Psy.D., and relying instead on the opinion of a

14  non-examining psychologist, Edward Jasinski, Ph.D.

15       3.  The ALJ erred by discounting Plaintiff's symptom testimony without providing

16  clear and convincing reasons for doing so.

17       Plaintiff argues that the Court should remand for payment of disability benefits.  (Doc.

18  29)

19       **A.  ALJ's Rejection of Treating Physicians' Assessments**

20       Plaintiff asserts that the ALJ erred by rejecting the assessments of Plaintiff's treating

21  physicians, Dr. Mastrin and Dr. Green, and instead relying on the opinion of a non-

22  examining state agency physician as part of the ALJ's determination.

23       More weight is generally given to the opinion of a treating physician than to a non-

24  treating source. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (1999); *Magallanes*, 881 F.2d at

25  751.  An ALJ may not reject a treating physician's opinion unless the ALJ "makes findings

26  setting forth specific legitimate reasons for doing so that are based on substantial evidence in

27  the record." *Smolen,* 80 F.3d at 1285.  If the treating physician's opinion is uncontroverted,

28  the ALJ's reasons for rejecting the opinion must be clear and convincing. *Id.*  However,

1   "the treating physician's opinion . . . is not necessarily conclusive as to either a physical

2   condition or to the ultimate issue of disability." *Magallanes*, 881 F.2d at 751.  A treating

3   physician's opinion may be given controlling weight only if it is well-supported by

4   medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent

5   with the other substantial evidence in the record.  See, 20 C.F.R. §§ 404.1527(d)(2),

6   416.927(d)(2) (1999).  If a treating physician's opinion is "brief and conclusory in form

7   with little in the way of clinical findings to supports [its] conclusion," an ALJ need not

8   accept it.  *Magallanes*, 881 F.2d at 751.

9          **1. Dr. Mastrin's Opinion**

10         Plaintiff asserts that the ALJ erred in rejecting Dr. Mastrin's opinion that Plaintiff

11   could not work.  Dr. Mastrin began treating Plaintiff for pain management in January 2006.

12   In an October 2006 medical statement completed for the Arizona Department of Economic

13   Security ("DES"), Dr. Mastrin opined that Plaintiff could lift less than 10 pounds occasion-

14   ally; stand/walk ½ to 1 hour at a time during an eight hour day; and could sit less than 2

15   hours at a time during an eight hour day. (Tr. 441-42)  Dr. Mastrin did not explain the basis

16   of her conclusions.  (Tr. 441-42)  Dr. Mastrin further opined that, due to Plaintiff's "neck &

17   back pain," she could never climb ladders/ropes/scaffolds; and could occasionally climb

18   ramps/stairs, balance, stoop, kneel, crouch, crawl, reach and handle.  (Tr. 442)  Dr. Mastrin

19   also opined that because Plaintiff was taking pain medication, she had several "environ-

20   mental restrictions" and should avoid working around heights, moving machinery, extreme

21   temperatures; and should avoid working with or around chemicals, dust/fumes or gas, and

22   excessive noise.  (Tr. 442)

23         At the request of DES, in June 2007, Dr. Mastrin completed a Medical Statement and

24   concluded that Plaintiff would be unable to perform any substantial gainful activity.  (Tr.

25   770-771).

26         The ALJ properly concluded that Dr. Mastrin's opinion that Plaintiff was unable to

27   work was entitled to little weight.  *See* 20 C.F.R. § 416.927 (stating that we will not give

28   special significance to the source of an opinion on issues reserved for the Commissioner).  In

1   affording Dr. Mastrin's opinion little weight, the ALJ noted that her opinion was

2   "unsupported by diagnostic examinations and clinical signs, [is] inconsistent with medical

3   opinions and the record as a whole, and appear[s] to be based primarily on the claimant's

4   subjective complaints." (Tr. 25)  Dr. Mastrin did not provide any explanation to support her

5   findings that Plaintiff could lift less than 10 pounds occasionally; stand/walk ½ to 1 hour at a

6   time during an eight hour day; and could sit less than 2 hours at a time during an eight hour

7   day. (Tr. 441-42)  The only basis Dr. Mastrin provided for her opinion was that, due to

8   Plaintiff's "neck & back pain," she could never climb ladders/ropes/scaffolds; and could

9   occasionally climb ramps/stairs, balance, stoop, kneel.  (Tr. 442)  However, Plaintiff's

10  allegations of pain are not supported by diagnostic examinations or clinical signs.  (Tr. 24,

11  25, 851)  Accordingly, it was reasonable for the ALJ to conclude that Dr. Mastrin based her

12  conclusions primarily on Plaintiff's subjective complaints. As discussed below, the ALJ

13  properly discounted Plaintiff's subjective complaints. A treating doctor's opinion can be

14  discounted if the opinion is based on a claimant's subjective complaints which are

15  unsupported or properly discredited by the ALJ.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217

16  (9th Cir. 2005).

17       Additionally, an ALJ may also properly discount a treating physician's opinion if it is

18  not supported by objective medical findings. *See Batson v. Commissioner of Social Security*

19  *Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, although Dr. Mastrin's

20  treatment notes indicate that Plaintiff suffered from pain (see e.g., Tr. 491, 502, 507,

21  describing pain as "aching, cramping, tightness, pins and needles, sharp, shooting, throb-

22  bing, pressure and stabbing" and noting that "pain is made worse by everything"), her

23  treatment notes also reflect that medication and other treatments provided relief for

24  Plaintiff's headaches and pain.  (See Tr. 491, 499, 317, 502, 507, 520 noting that pain is

25  improved by ice, heat, rest, lying down, frequent position changes, walking and narcotic and

26  prescription medication, pain is better in the p.m.).  Additionally, as the ALJ noted, results

27  of diagnostic examinations, such as MRIs, showed no signs of significant medical

28  conditions.  (Tr. 22; 419, 432)

1    The ALJ gave clear and convincing reasons for giving little weight to Dr. Mastrin's

2    opinion.  *See Rollins*, 261 F.3d at 856 (finding that ALJ properly found a treating physi-

3    cian's opinion was not controlling when it was not supported by any findings.); *Burkhart v.*

4    *Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (rejecting opinion where it was unsupported

5    by medical findings, personal observation, or test results.).  The ALJ did not commit legal

6    error in rejecting Dr. Mastrin's conclusions on a  "check-off" form that did not include any

7    support for those conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Thomas v.*

8    *Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) (stating that the ALJ is not required to accept the

9    opinion of a treating physician if that opinion is inadequately supported by clinical findings).

10   The ALJ may reject opinions that are unsupported or opinions expressed on check-mark

11   forms. *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2003).

12       **2. Dr. Green**

13       In January 2009, Dr. Green completed a pain functional capacity questionnaire.  (Tr.

14   851-52)  He opined that Plaintiff had moderately severe pain.  (Tr. 851)  He further opined

15   that Plaintiff's degree of pain could not "reasonably be expected to result from objective

16   clinical or diagnostic findings, which have been documented by [him], or elsewhere in

17   [Plaintiff's] medical records."  (Tr. 851)  The ALJ did not err in discounting Dr. Green's

18   opinion and articulated clear and convincing reasons for doing so.  (Tr. 25)  The ALJ noted

19   that Dr. Green's opinion was "unsupported by diagnostic examinations and clinical signs,

20   [is] inconsistent with medical opinions and the record as a whole, and appear[s] to be based

21   primarily on the claimant's subjective complaints." (Tr. 25)  The ALJ gave clear and

22   convincing reasons for discounting Dr. Green's opinion.  Dr. Green's own opinion states

23   that it is not supported by "objective clinical or diagnostic findings."  (Tr. 851)   Thus, the

24   ALJ reasonably concluded that Dr. Green's opinion was based on Plaintiff's subjective

25   complaints.  Because Dr. Green's opinion was based on Plaintiff's subjective complaints,

26   which the ALJ properly discounted as discussed below, the ALJ properly rejected Dr.

27   Green's opinion. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (stating that the ALJ

28   need not accept a treating physician's opinion which is based on discredited subjective

1    complaints of the claimant.).  An ALJ properly discounts an opinion that is based on a

2    claimant's subjective characterization of her symptoms, which the ALJ found not entirely

3    credible.  *Bray v. Commissioner of Social Security*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see*

4    *also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (rejecting physician's opinion in

5    part because it was based on claimant's subjective complaints, not on new objective find-

6    ings).  Additionally, an ALJ "need not accept the opinion of any physician, including a

7    treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

8    findings."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1045 (9th Cir. 2007) (quoting *Thomas*, 278

9    F.3d at 957); *see also Batson v. Commissioner of Social Security Administration*, 359 F.3d

10   1190, 1195 (9th Cir.2004) (stating that an ALJ may properly discount a treating physician's

11   opinion if it is not supported by objective medical findings).  The ALJ provided clear and

12   convincing reasons to discount Dr. Green's opinion.  *See Tibbs v. Astrue*, 2008 WL

13   2705175, * 5 (C.D.Cal. 2008) (concluding that the ALJ properly rejected treating doctor's

14   opinion "based upon such physician's admission that there are no objective findings"

15   supporting his diagnoses.).

16       **3. Dr. Shallenberger**

17       Although the ALJ provided clear and convincing reasons for discounting the opinions

18   of Drs. Mastrin and Green, she was only required to provide specific and legitimate reasons

19   because the opinion of state agency physician, Dr. Shallenberger, contradicted the

20   assessments of the treating doctors.  *Morgan v. Apfel*, 169 F.3d 595, 601 (9th Cir. 1999).  Dr.

21   Shallenberger, a state agency reviewing doctor, completed a Physical Residual Functional

22   Capacity Assessment form and opined that Plaintiff could perform sedentary work.  (Tr. 559

23   -566)  Dr. Shallenberger explained that the "statements of the claimant regarding her

24   symptoms and functional abilities are not fully supported by the medical evidence presented

25   to us and for this reason I find her statements only partially credible."  (Tr. 564)  Unlike the

26   forms completed by Dr. Mastrin and Dr. Green, which included little to no explanation for

27   their findings, Dr. Shallenberger fully explained why he disagreed with the conclusions of

28   the treating physicians. (Tr. 565)   Although Drs. Mastrin, Green, and Shallenberger

- 15 -

1   provided opinions on "check-box forms," only Dr. Shallenberger provided a detailed

2   explanation for his conclusions.  (Tr. 565-66)    He noted that a March 3, 2006 MRI of the

3   cervical spine revealed "no evidence of herniated disk or significant canal or foraminal

4   narrowing or ventral extra-dural effect."  (Tr. 566; see Tr. 444)   Dr. Shallenberger also

5   noted inconsistent reporting by Dr. Mastrin and Dr. Calkin about the "straight leg raising

6   test."  (Tr. 566)  In March 2006, Dr. Calkin reported the straight leg raising test was negative

7   and Dr. Mastrin reported that it was "positive to 20% on the left."  (*Id*.)  On July 26, 2006,

8   Dr. Calkin noted that Plaintiff "is  doing much better and she states that the majority of her

9   head and neck pain has resolved." (Tr. 566)   Dr. Shallengberger found the Medical Source

10   Statement completed by Dr. Mastrin "extremely restrictive and not justified by her physical

11   findings.  Because of this, I have rejected this MSS."  (Tr. 566)   Dr. Shallenberger found

12   that Plaintiff has "a tremendous amount of emotional overlay which adversely affects her

13   pain . . . most of the problems are subjective rather than objective."  (Tr. 566)   Dr.

14   Shallengberger opined that Plaintiff could perform sedentary work. (*Id*.)

15        Dr. Shallenberger's opinion "may also serve as substantial evidence when the

16   opinions are consistent with independent clinical findings or other evidence in the record."

17   *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Dr. Shallengberger's opinion is consistent with

18   the record, including the opinion of Dr. Bailey, and the treatment notes reporting that

19   Plaintiff's symptoms are helped by medication or other treatment.  (*see* Tr. 432, 583, 973) In

20   this case, Dr. Shallenberger did not testify at the administrative hearing. As Plaintiff notes,

21   Ninth Circuit case law indicates that the Commissioner may give more weight to the

22   opinions of non-examining physicians where the non-examining physicians testify at the

23   administrative hearing and are subject to cross-examination.  *Andrews v. Shalala*, 53 F.3d

24   1035, 1042 (9th Cir. 1995) (noting that "[b]ecasue she was subject to cross-examination, the

25   ALJ could legitimately credit [the non-examining doctor's] testimony.").  However, these

26   cases do support Plaintiff's argument that the ALJ could not rely on the non-examining

27   physician's opinion unless he testified at the hearing.  The ALJ properly considered the

28   opinion of Dr. Shallenberger.

**B.  Examining Psychologist -RFC Assessment**

Plaintiff further argues that the ALJ erred by rejecting the assessment of state agency examining psychologist, Patricia Abbott, Psy.D., and relying instead on the opinion of non-examining psychologist, Edward Jasinski, Ph.D., in assessing Plaintiff's residual functional capacity.

Here, the ALJ found that Plaintiff retained the mental residual functional capacity to perform simple work.  (Tr. 20)   The ALJ's assessment is supported by substantial evidence and is free from legal error.  The ALJ stated that Dr. Abbott's assessment was "given weight only to the extent that it is consistent with the record as a whole."  (Tr. 25)  The ALJ then credited the opinions of state agency psychologist Stephen Bailey, examining psychiatrist Dr. Narvaiz, and testifying expert, Dr. Jasinski.  (Tr. 23-25)

In November 2006, Stephen Bailey, a state agency reviewing psychologist, opined that, based on review of Plaintiff's records, Plaintiff was capable of "understand[ing], carry[ing] out and remember[ing] simple instructions.  Further, [Plaintiff] should be able to respond appropriately to supervision and co-workers, and deal with changes in a routine work setting."  (Tr. 583)   He explained that there was no evidence of "psychologically based symptoms such as depression, anxiety, or mental impairment that is connected with her [2004 car accident]."  (Tr. 583)   Dr. Bailey also found that some of the limitations noted on Plaintiff's Medical Source Statement were overstated and were not supported by the medical record.  (Tr. 583)   Dr. Bailey further noted that "there are reports from the treating physicians from May, June and July of [2006], who report that she has made '90 % reduction in targeted symptoms,' [Tr. 456] and '60% reduction in targeted symptoms' and 'progressing as expected,' in regards to her physical pain." (Tr. 583) The opinion of a reviewing physician may serve as substantial evidence when, as here, it is consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

In July 2007, Robert Narvaiz, M.D., a psychiatrist, examined Plaintiff on the request of the state agency.  (Tr. 766-768)  Dr. Narvaiz did not assess any limitations based on his mental status examination.  (Tr. 766-68)  Plaintiff challenges Dr. Narvaiz' opinion because

1   his report does not mention the psychological testing detailed in Dr. Abbott's report.  Dr.

2   Narvaiz indicated that he examined Plaintiff herself, "psychiatric progress notes from early

3   2007 . . . a psychiatric evaluation from . . . January 2007 . . . and a Function Report to an

4   Adult which was completed April 2007."  (Tr. 766)   It does not appear that Dr. Narvaiz was

5   provided the 2006 Medical Source Statement and evaluation conducted by Dr. Abbott.

6   Regardless, Dr. Narvaiz personally examined Plaintiff and formed opinions based on his

7   examination of the portions of the record provided to him.

8        Finally, Dr. Jasinski testified that Plaintiff's mental impairments could affect her

9   ability to understand, remember, and carry out detailed instructions, but Plaintiff should be

10  able to understand, remember, and carry out simple instructions and maintain pace for an

11  eight-hour day.  (Tr. 36)   Dr. Jasinki testified at the hearing and was subject to cross-

12  examination.  As such, the ALJ properly gave greater weight to Dr. Jasinski's opinion.  *See*

13  *Andrews*, 53 F.3d at 1042; *Richardson v. Perales*, 402 U.S. 389, 396 (1971) (stating that an

14  "independent medical advisor . . . is an expert who does not examine the claimant but who

15  hears and reviews the medical evidence and may offer an opinion.").

16       As stated above, Plaintiff argues that the ALJ erred in rejecting the opinion of Dr.

17  Abbott and relying on the opinions of Dr. Narvaiz, Bailey and Jasinski.  Patricia Abbott,

18  Psy. D, examined Plaintiff at the request of the state agency.  (Tr. 522)  Her opinion is

19  consistent with the severity assessment completed by psychologist Bailey, except that Dr.

20  Abbott opined that Plaintiff was moderately limited in her ability to: perform activities

21  within a schedule, maintain regular attendance, and be punctual with customary tolerances;

22  work in coordination with or proximity to others without being distracted by them; make

23  simple work-related decisions; and complete a normal workday and workweek without

24  interruptions from psychologically based symptoms and to perform at a consistent pace

25  without an unreasonable number and length of rest periods.  (Tr. 547-51; compare with Tr.

26  581-82)

27       The additional limitations found by Dr. Abbott, however, are given severity ratings

28  which do not opine on Plaintiff's functional limitations.  On the other hand, the assessment

1   provided by Drs. Narvaiz, Jasinski, and Psychologist Bailey include opinions on Plaintiff's

2   functional abilities.  The ALJ did not err in relying on those opinions rather than Dr.

3   Abbott's severity ratings.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir.

4   2008); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) ("[The state agency medical

5   consultant] translated [the severity] findings into a specific RFC assessment . . . [B]ecause

6   [he] was the only medical expert who made an RFC determination, the ALJ reasonably

7   relied upon his opinion in formulating the hypothetical. . . .").

8           In addition, Psychologist Bailey noted that the additional limitations found by Dr.

9   Abbott were not supported by the medical record.  (Tr. 583)  When evaluating conflicting

10  medical opinions, "the ALJ need not accept the opinion of any physician, including a

11  treating physician, it that opinion is brief, conclusory, and inadequately supported by clinical

12  findings."  *Lingenfelter*, 504 F.3d at 1044-45 (quoting *Thomas*, 278 F.3d at 957).

13          Thus, because the ALJ's mental residual capacity finding is supported by substantial

14  evidence, including the opinions of an examining psychiatrist, a testifying medical expert,

15  and a reviewing state agency psychologist, the ALJ's decision should be affirmed.  *Batson*,

16  359 F.3d at 1193.

17          Plaintiff argues that "Dr. Jasinski admitted the treating notes showed inability to

18  sustain work."  Plaintiff mischaracterizes Dr. Jasinski's opinion.  Rather, Dr. Jasinski

19  testified that, "based upon solely the treatment notes, I mean the diagnoses and the GAFs, it

20  would be my opinion that that would impact on an individual's ability to maintain

21  functioning secondary to difficulties because of mental health symptoms."  (Tr. 40-41)

22  Although Dr. Jasinski opined there would be an "impact," he did not opine that Plaintiff

23  would be precluded from "sustain[ing] work."  Moreover, Dr. Jasinski opined that the

24  evaluations were "more thorough and complete and I believe are better descriptions of the

25  symptoms and signs" than the treatment notes.  (Tr. 39-40)

26      **C.  Plaintiff's Credibility**

27          In denying Plaintiff's application, the ALJ also found that Plaintiff's allegations

28  concerning the "intensity, persistence and limiting effects of her symptoms" were not

1    entirely credible.  (Tr. 21)  Plaintiff argues that the ALJ erred in failing to provide clear and

2    convincing reasons for rejecting Plaintiff's symptom testimony.

3           In deciding whether to accept a claimant's subjective symptom testimony regarding

4    the severity of symptoms, the court must determine whether the claimant has produced

5    objective medical evidence of the impairments at issue. *Carmickle v. Comm'r, Soc. Sec.*

6    *Admin.*, 533 F.3d 1155, 1160-61 (9th Cir. 2008).  Next, the claimant must show that her

7    medically determinable impairments could reasonably be expected to produce some degree

8    of the symptoms of which the claimant complained. *See Smolen*, 80 F.3d at 1282.

9           Here, the ALJ found that "the claimant's medically determinable impairments could

10   reasonably be expected to cause the alleged symptoms."  (Tr. 21)  Thus, because the ALJ

11   found no evidence of malingering, she was permitted to disregard Plaintiff's testimony about

12   the symptoms' severity only by offering specific, clear, and convincing reasons for doing so.

13   *Lingenfelter*, 504 F.3d at 1036.  To determine whether the claimant's testimony regarding

14   the severity of her symptoms is credible, the ALJ may consider the following: "(1) ordinary

15   techniques of credibility evaluation, such as the claimant's reputation for lying, prior

16   inconsistent statements concerning the symptoms, and other testimony by the claimant that

17   appears less than candid; (2) unexplained or inadequately explained failure to seek treatment

18   or to follow a prescribed course of treatment; and (3) the claimant's daily activities."

19   *Smolen*, 80 F.3d at 1284.  The ALJ may also consider the claimant's work record, and the

20   observations of treating and examining physicians and other third parties regarding "the

21   nature, onset, duration and frequency of claimant's symptoms, and  precipitating and

22   aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily

23   activities."  *Id.*

24          Here, the ALJ found that Plaintiff was not credibly reporting the severity of her

25   symptoms because the record contained evidence, including Plaintiff's own testimony, that

26   the prescribed medication and treatments effectively treated her impairments.  The ALJ

27   noted that Plaintiff's allegations regarding the side effects of medication were not supported

28   by contemporaneous treatment notes.  (Tr. 21)  The ALJ's opinion was based on various

1  treatment notes which described Plaintiff as alert and aware, oriented with no evidence of

2  drug intoxication, and Plaintiff denied significant side effects.  (Tr. 21; Tr. 301, 306, 317,

3  333, 335, 424, 428, 491, 541, 543, 545)  Under Ninth Circuit law, a condition that can be

4  reasonably treated with medication cannot serve as a basis for a finding of disability. *See*

5  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conserva-

6  tive treatment' is sufficient to discount a claimant's testimony regarding severity of an

7  impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting

8  subjective pain complaints where petitioner's "claim that she experienced pain approaching

9  the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that

10  she received."). The record supported the ALJ's finding that Plaintiff's conditions responded

11  to medication.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (stating that minimal

12  level of treatment suggested a lower level of pain and functional limitation than alleged by

13  claimant).

14        Additionally, the ALJ noted that Plaintiff's allegations of the severity of her

15  limitations were not supported by the medical evidence.  (Tr. 21-22)  "Contradiction with

16  the medical record is a sufficient basis for rejecting the claimant's subjective testimony."

17  *Carmickle*, 533 F.3d at 1161 (citing *Johnson*, 60 F.3d at 1434).  This finding is supported by

18  Dr. Green's 2009 pain functional capacity questionnaire.  (Tr. 851-52)  Dr. Green opined

19  that Plaintiff's degree of pain cannot be "reasonably expected to result from objective

20  clinical or diagnostic findings, which have been documented by [him] or elsewhere in

21  [Plaintiff's] medical records."  (Tr. 851)

22        Finally, the ALJ noted that Plaintiff's daily activities were inconsistent with her

23  claims of disabling symptoms.  (Tr. 23)  Contrary to Plaintiff's assertion, the ALJ did not

24  place undue significance on  Plaintiff's daily activities.  An ALJ may properly infer from

25  Plaintiff's daily activities that she is not as limited as she claims.  *See Bray*, 554 F.3d at 1227

26  (Plaintiff's active lifestyle, which including cleaning, cooking, walking her dogs, and

27  driving to appointments, did not support her allegations of disabling respiratory illness).

28  Additionally, an ALJ may consider Plaintiff's active search for employment in assessing her

1  credibility.  *Id.*

2       Here, Plaintiff testified that she never went outside.  (Tr. 49)  She further testified that

3  she spent her day getting her son up for school (internet classes), making him something to

4  eat, and then lying down the rest of the day.  (Tr. 49) She also spent about fifteen minutes

5  per day cleaning.  (Tr. 54)  This testimony differs from the activities of daily living she

6  reported to her treatment providers.  (Tr. 23)  She reported that she walked one to two miles

7  per day, three to four days a week (Tr. 418, 493), was functional and independent in her

8  activities of daily living (Tr. 424), she hurt herself moving a forty pound television stand

9  (Tr. 427), performed housework for two to three hours at a time (Tr. 430, 522), and looked

10  for employment (Tr. 434, 437).  Additionally, even if Plaintiff did not perform daily

11  activities for a substantial period of time, the ALJ properly considered them in finding that

12  Plaintiff's subjective complaints were not credible to the extent alleged.  *See, Rollins v.*

13  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating that "[i]t is true that Rollins's

14  testimony was somewhat equivocal about how regularly she was able to keep up with all of

15  these activities, and the ALJ's interpretation of her testimony may not be the only reasonable

16  one.  But it is still a reasonable interpretation and is supported by substantial evidence; thus,

17  it is not our role to second guess it.").

18       Based on the foregoing, the ALJ articulated clear and convincing reasons for

19  discounting Plaintiff's subjective complaints regarding the severity of her symptoms.  (Tr.

20  20-23) The ALJ's determination of Plaintiff's credibility is affirmed.

21  **Vi.  Conclusion**

22       The ALJ did not commit legal error in questioning the credibility of Plaintiff's

23  testimony regarding the severity of her symptoms or in failing to give more weight to Dr.

24  Mastrin's and Dr. Green's opinions. Moreover, the record contains substantial evidence in

25  support of the ALJ's conclusion that Plaintiff was not disabled.  The ALJ correctly assessed

26  Plaintiff's residual functional capacity.

27       Accordingly,

28       **IT IS ORDERED** that the Commissioner's decision denying Plaintiff benefits in this

case is hereby **AFFIRMED**. The Clerk is directed to terminate the judicial review of the

decision by the Commissioner of Social Security Administration.

Dated this 18th day of November, 2010.

Lawrence O. Anderson
United States Magistrate Judge